COPE, J.
Alfredo Armando Diaz appeals his conviction for first degree murder and other offenses. We affirm.
Defendant-appellant Diaz first contends that he is entitled to a new trial, or to have his first degree murder conviction reduced to the crime of second degree murder. During the initial effort to try defendant’s case in December of 1999, the trial judge decided to terminate proceedings after voir dire, but before jury selection began. Subsequently, the defendant’s case was tried by a different trial judge, resulting in the defendant’s conviction of first degree murder and other charges. Defendant *683 contends that the 1999 termination of proceedings constituted, under the circumstances, a violation of his double jeopardy and due process rights.
The complained-of jury selection proceedings began in mid-December 1999. At the outset, the defendant claimed that his appointed counsel was working with the State to see that he would be convicted. After conducting an appropriate inquiry, the trial judge found no deficiency on the part of appointed counsel, and denied defendant’s motion to discharge him.
During the course of proceedings the trial judge advised the parties that she would need to recuse herself if a particular State witness testified. Eventually, the parties agreed to waive any recusal issue. The defendant did this on the advice of his counsel.
It then turned out that owing to various scheduling problems of essential witnesses, the trial phase of proceedings would not be able to begin until January 3. The trial judge was reluctant to allow a three-week delay between jury selection and trial.
It also came to light that the grand jury indictment for first degree murder actually contained the charging language for the offense of second degree murder.[1] Rather than request a continuance to return to the grand jury, the State indicated that it would proceed on the charging document as written, for second degree murder. The defendant after consulting his counsel agreed.
After a break at the conclusion of voir dire, the trial judge announced that upon further reflection, she thought the better course of action would be to terminate proceedings, transfer the case back to the assigned judge, and start jury selection anew after the first of the year. That took place, and the case was ultimately tried by a different judge.[2]
The centerpiece of defendant’s complaint is that after the December 1999 proceedings were terminated, the State returned to the grand jury, which corrected the indictment so as to include the appropriate language charging first degree murder. Defendant was ultimately convicted of first degree murder. If, however, the proceedings initiated in December of 1999 had gone to trial without interruption, it would have been a trial for second degree murder.
Defendant argues that the action of the trial judge in terminating the proceedings in December of 1999 constituted a bad faith effort on the part of the trial judge to allow the State to obtain an indictment for first degree murder. We reject the defendant’s argument.
First, a jury was never actually selected, much less sworn, so there is no double jeopardy violation. Koenig v. State, 497 So.2d 875, 881 (Fla. 3d DCA 1986). Defendant relies on an exception suggested in Koenig which states:
It is apparent in the foregoing observation that the concern there expressed is the imagined bad faith effort by a trial judge to obtain a conviction-prone jury while avoiding putting the defendant in jeopardy. While we, of course, share that concern, there is absolutely no indication in the present case that the trial *684 court, though in error, acted out of a desire to aid the prosecution or harm the defendant. Moreover, were there evidence that the proceedings were terminated in such bad faith, the argument that double jeopardy should bar further proceedings whether or not the jury was sworn, or the argument that further proceedings would violate the defendant’s due process rights might very well succeed. See Schulhofer, [Jeopardy and Mistrials, 125 U.Pa.L.Rev. 449,] 513 [ (1977) ] (“The due process clause presumably affords protection during the voir dire period against a mistrial deliberately induced to deprive the defendant of a potentially favorable panel.”). For now, however, it is enough to note that the present case does not involve the envisioned horrible of a trial judge’s effort to get a hanging jury.
Id. (emphasis added).
Koenig addresses a defendant’s “valued right in retaining a chosen jury, a right protected by the constitutional guarantee against double jeopardy....” Id. But in this case, a jury was never chosen. The scenario outlined in Koenig—the discharge of a chosen (but not sworn) jury in hopes of getting a more conviction-prone one—did not occur in this case.
Second, the Koenig exception which the defendant relies on requires not just error on the part of the trial judge, but bad faith. We see no basis on which to say that the trial judge acted in bad faith in this matter. The judge clearly had qualms about trying the case. After the recusal issue had arisen the judge had proposed to complete jury selection and then hand the case off to another judge for trial. While the defendant had personally waived any recusal objection, it is plain the trial judge was less than comfortable with the situation, and the defendant who gave the in-person waiver was the same defendant who, the previous day, insisted that his counsel was cooperating with the State to convict him.[3]
The proposition that the trial judge terminated proceedings so that the State could return to the grand jury does not withstand analysis. The judge had already offered the State the option to return to the grand jury and the State declined to do so. Once the proceedings were terminated, it was for the State to decide whether to ask the grand jury to correct the language in the indictment so as to charge first degree murder, or proceed on the charge of second degree murder. The judge who terminated proceedings was a substitute judge who had no continuing responsibility for the case, and further proceedings were conducted by other judges.
As the next point on appeal, Diaz argues that in his trial, the court committed fundamental error by failing to give the standard jury instruction on accomplice testimony. At the start of the trial at issue here, a co-defendant entered a plea bargain and agreed to testify on behalf of the State. The defendant contends that it was fundamental error to fail to give the accomplice instruction, in light of the fact that the co-defendant testified in the trial. The court gave Standard Jury Instruction 2.04 on weighing the evidence.[4] We conclude there was no fundamental error and reject the defendant’s argument on authority of Dennis v. State, 817 So.2d 741 (Fla.2002), and Boykin v. State, 257 So.2d 251 (Fla.1971), vacated in part on other *685 grounds, Boykin v. Florida, 408 U.S. 940, 92 S.Ct. 2876, 38 L.Ed.2d 763 (1972).
On the final point, we conclude that the trial court’s ruling on the continuance was within its discretion.
Affirmed.

. The State initially charged the defendant by information with second degree murder. When the grand jury met, the State obtained an indictment against the defendant which states that the charge is first degree murder. Through error, the body of the indictment included the language charging second degree murder rather than first degree murder.

. In the meantime there was another trial (also before a different judge) which ended in a hung jury.

. At sentencing the defendant reiterated his claims that defense counsel had intentionally sold him out.

. The instruction included paragraphs 1-5, and 7-9, of the standard juiy instruction.